UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT JOHNSON,<br><br>   Plaintiff,<br><br> v.<br><br>INGRID CHAO et al.,<br><br>   Defendants. | Case No. 19-cv-03429-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>[Re: ECF 19-1] |

In this action, Plaintiff Scott Johnson asserts claims under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the California Unruh Civil Rights Act (the "Unruh Act"), Cal. Civ. Code §§ 51-53. *See generally* Compl., ECF 1. Plaintiff seeks injunctive relief along with statutory damages, attorneys' fees, and costs. *Id.*

Ingrid Chao and Nelson Chao (together, "Defendants") failed to answer the Complaint or otherwise appear in this matter. At Mr. Johnson's request, the Clerk of Court entered default as to Defendants on August 29, 2019. Entry of Default, ECF 15. Now before the Court is Mr. Johnson's Motion for Default Judgment ("Motion"). Mot., ECF 19. Because Defendants have not appeared in this case, there is no notice requirement for either the entry of default or Plaintiff's motion for default judgment. *See* Fed. R. Civ. P. 55(a), (b)(2). Defendants did not oppose or otherwise respond to the Motion. Briefing on the matter is now closed. Civ. L.R. 7-3(a). This matter was previously deemed suitable for determination without oral argument. *See* ECF 21. For the reasons discussed below, the Court GRANTS Plaintiff's motion for default judgment.

**I. BACKGROUND**

According to his Complaint, Plaintiff is a level C-5 quadriplegic who cannot walk and has

significant manual dexterity impairments. Compl. ¶ 1. Mr. Johnson says that he uses a wheelchair for mobility and has a specially equipped van. *Id.* Defendants are the alleged owners of the Executive Inn and Suites (the "Motel") in Morgan Hill, California and the parcel of real property where the Motel is located. *Id.* ¶¶ 2-9.

Mr. Johnson alleges that barriers at the Motel prevented him from enjoying full and equal access to the facility. Compl. ¶¶ 22-27. Specifically, Mr. Johnson alleges that he visited the Motel on several occasions, including twice in January 2018, twice in November 2018, and once in March 2019. *Id.* ¶ 14. During each of those visits, Mr. Johnson claims that he encountered the following types of access barriers:

1. Mr. Johnson claims that Defendants fail to provide accessible parking. Compl. ¶ 18. Mr. Johnson claims that the surface slope of the handicap access aisles made it so that he was unable to deploy his wheelchair. Mot. at 2.
2. Mr. Johnson claims that Defendants have a sales counter that, as built, complies with the ADA standards for accessible design. Compl. ¶ 20. Mr. Johnson claims, however, that on the dates of his visits Defendants used the sales counter as a storage area, for example, by placing newspapers on the counter. *Id.* ¶ 21. Therefore, Mr. Johnson claims that the sales counter was not maintained in a manner that was readily accessible and useable to him. *Id.* ¶ 20.
3. Mr. Johnson claims that Defendants have failed to provide accessible guestrooms. Compl. ¶ 23. Mr. Johnson claims to have personally encountered barriers that denied him full and equal access to the guestrooms. *Id.* ¶¶ 26-27.

According to Mr. Johnson, Defendants' failure to provide accessible facilities created "difficulty and discomfort" for him. Compl. ¶ 27. Mr. Johnson claims that he will return to the Motel once it is represented to him that the Motel and its facilities are accessible. *Id.* ¶ 30.

## II. LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action, and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a).

After entry of default, a court may, in its discretion, enter default judgment. Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to enter default judgment, a court may consider the following factors, known as the *Eitel* factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). When the damages claimed are not readily ascertainable from the pleadings and the record, a court may hold a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

## III. JURISDICTION AND SERVICE OF PROCESS

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

### A. Subject matter jurisdiction

District courts have subject matter jurisdiction of all civil actions arising under the laws of the United States. 28 U.S.C. § 1331. Further, in any civil action where the district courts have subject matter jurisdiction, the district courts will also have supplemental jurisdiction over all other claims that are so related to claims in the action, such that they form part of the same case or controversy. 28 U.S.C. § 1367. Mr. Johnson's claim for relief pursuant to the ADA presents a civil action arising under a law of the United States. Therefore, this Court has subject matter jurisdiction over Mr. Johnson's ADA claim. Moreover, Mr. Johnson's claim for relief pursuant to the Unruh Act is so related to the ADA claim because it arises out of the same "case or controversy," namely Mr. Johnson's visits to the Motel where he encountered alleged violations of both laws. Therefore, the Court has supplemental jurisdiction over Mr. Johnson's Unruh Act

3

claim.

### B. Personal jurisdiction and service of process

Serving a summons establishes personal jurisdiction over a defendant, who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. Fed. R. Civ. P. 4(k)(1). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Further, an individual may be served following state law for serving a summons in an action. Fed. R. Civ. P. 4(e)(1). Under California law, a summons may be served by leaving a copy of the summons and complaint during usual office hours with the person who is apparently in charge, and by mailing a copy of the summons and complaint to the person to be served at the place where a copy of the summons and complaint were left. Cal. Civ. Proc. Code § 415.20(a).

Mr. Johnson has submitted public records indicating that Defendants are domiciled in California and that they own the real property in Morgan Hill, California on which the Motel is located. Exh. 5 to Mot., ECF 19-7. Mr. Johnson successfully served Defendants on June 26, 2019, by delivering copies of the summons and complaint via personal service and thereafter mailing a copy of summons and complaint, addressed to Defendants, at the address of the Motel. *See* Returned Summons for Ingrid Chao, ECF 10; Returned Summons for Nelson Chao, ECF 11. As such, the Court is satisfied that Mr. Johnson gave Defendants proper service of process under both the Federal Rules of Civil Procedure and the California Code of Civil Procedure. Therefore, the Court has personal jurisdiction over the Defendants.

## IV. *EITEL* FACTORS

For the reasons to be discussed, the *Eitel* factors weigh in favor of entering default judgment.

### A. The possibility of prejudice to Mr. Johnson

The first *Eitel* factor requires the Court to consider whether Mr. Johnson would be prejudiced if default judgment is not entered. Unless default judgment is entered, Mr. Johnson will have no other means of recourse against Defendants. As such, Mr. Johnson will be prejudiced if default judgment is not entered. *See, e.g.*, *Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL

4

2287668, at *5 (N.D. Cal. May 18, 2018) (finding that plaintiff would be prejudiced if default judgment was not entered because she "would have no other means of recourse against Defendants for damages caused by their conduct").

**B.     The merits of Mr. Johnson's claims and the sufficiency of the complaint**

Pursuant to the second and third *Eitel* factors, this Court concludes that the Complaint alleges meritorious substantive claims for relief under the ADA and the Unruh Act.

### 1.   Title III of the ADA, 42 U.S.C. § 12101, *et seq.*

Title III of the ADA prohibits discrimination on the basis of disability within places of public accommodation: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For purposes of Title III, discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv). "Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* § 12181(9).

#### a.   Mr. Johnson's Article III Standing

In order to bring a claim under Title III of the ADA, Mr. Johnson must establish Article III standing. To establish Article III standing, Mr. Johnson must demonstrate he suffered an injury in fact, traceable to Defendants' conduct, and redressable by a favorable court decision. *Ridola*, 2018 WL 2287668, at *5 (citing *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006)). Mr. Johnson claims that he suffers from a disability within the meaning of the ADA. Compl. ¶ 1. Mr. Johnson alleges that he personally encountered access barriers at the Motel with respect to the parking lot, sales counter, and guestrooms. *Id.* ¶¶ 16-25. Further, Mr. Johnson claims that he will return to the Motel once its facilities are made accessible. *Id.* ¶ 30; *see Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1008 (C.D. Cal. 2014) ("Indeed, '[d]emonstrating an intent to return to a non-compliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief.'" (quoting *Chapman v. Pier 1 Imports (U.S.), Inc.*,

631 F.3d 939, 949 (9th Cir. 2011)).

Because Mr. Johnson's factual allegations are accepted as true, and an award of statutory damages and injunctive relief would redress Mr. Johnson's alleged injuries caused by Defendants' conduct, the Court finds that Mr. Johnson has Article III standing to sue under the ADA.

### b. ADA Claim Elements

To prevail on his Title III discrimination claim, Mr. Johnson must show that (1) he is disabled within the meaning of the ADA; (2) Defendants own, lease, or operate a place of public accommodation; and (3) he was denied public accommodations by Defendants because of his disability. *See Molski v. M.J. Cable Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). To succeed on an ADA claim based on architectural barriers, Mr. Johnson "must also prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable." *Ridola*, 2018 WL 2287668 at *5.

Mr. Johnson has adequately alleged an ADA claim. First, Mr. Johnson has established that he has a disability within the meaning of the ADA. Under the ADA, a physical impairment that substantially affects a major life activity, such as walking, qualifies as a disability. 42 U.S.C. §§ 12102(1)(A), 12102(2)(A). Mr. Johnson is a C-5 quadriplegic who uses a wheelchair for mobility. Compl. ¶ 1. Second, Mr. Johnson alleges that Defendants own the Motel, a place of public accommodation. *Id.* ¶¶ 2-9; *see* 42 U.S.C. § 12181(7)(A) (listing "an inn, hotel, or other place of lodging" as a place of public accommodation). Third, Mr. Johnson alleges that during several visits to the Motel, he personally encountered access barriers with respect to the parking lot, sales counter, and guestrooms. Compl. ¶¶ 16-25.

Next, with respect to the architectural barriers, Mr. Johnson contends that Defendants' parking lot, sales counter, and guest rooms are architectural barriers that violate the 1991 Standards of the ADA Accessibility Guidelines (the "ADAAG"). Mot. at 11. The ADAAG provide "objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman*, 631 F.3d at 945. As such, "a violation of the ADAAG constitutes a barrier under the ADA." *Ridola*, 2018 WL 2287668, at *7.

6

1  Mr. Johnson claims that the Motel's failure to provide accessible parking violates the 1991
2  ADAAG Standards. Mot. at 11. Under the 1991 Standards, parking spaces and access aisles must
3  be level with surface slopes not exceeding a one to fifty ratio (2%) in all directions. 28 C.F.R., Pt.
4  36, App. D § 4.6.3. "An essential consideration for any design is having the access aisle level
5  with the parking space." *Id.* "Since a person with a disability, using a lift or ramp, must maneuver
6  within the access aisle, the aisle cannot include a ramp or sloped area." *Id.* Mr. Johnson alleges
7  that the access aisle between the accessible parking spaces has a slope exceeding a one to fifty
8  ratio. Mot. at 12. Accepting Mr. Johnson's allegations as true, the Court finds that he has
9  successfully demonstrated that the Motel's parking aisle is prohibited by the ADA (or, as
10 discussed below, the Unruh Act) and that the parking aisle denied him full and equal access to the
11 Motel and parking lot because of his disability.

12 Mr. Johnson claims that the Motel's failure to provide accessible guestrooms violates the
13 1991 ADAAG Standards. Mot. at 13. Under the 1991 Standards, sleeping rooms required to be
14 accessible must be dispersed among various classes of sleeping accommodations to provide a
15 range of options applicable to room size, costs, amenities, and number of beds. 28 C.F.R., Pt. 36,
16 App. D § 9.1.4. Mr. Johnson claims that the Motel does not have any accessible two-bed
17 guestrooms. Exh. 2 to Mot. ¶ 7, ECF 19-4. Accepting Mr. Johnson's allegations as true, the Court
18 finds that he has successfully demonstrated that the Motel's lack of accessible two-bed guestrooms
19 violates the ADA (or, as discussed below, the Unruh Act) and that the guestrooms denied him full
20 and equal access to the Motel because of his disability.

21 In addition, Mr. Johnson claims that the Motel failed to provide an accessible sales
22 counter. Compl. ¶ 20. Mr. Johnson alleges that even though the Motel's sales counter was ADA
23 compliant, it was not readily accessible and useable to him because Defendants placed newspapers
24 on the counter and used it as a storage area on the dates of his visits. *Id.* ¶ 20. However, merely
25 alleging that a sales counter was cluttered with merchandise is insufficient by itself to support the
26 conclusion that a wheelchair user was deprived of "full and equal" access to the services of a
27 public accommodation. *See Johnson v. Starbucks Corp.*, No. 2:16-cv-2797 WBS AC, 2019 WL
28 699136, at *5 (E.D. Cal. Feb. 20, 2019) (denying summary judgment on allegation of "counter

7

cluttered with merchandise"). Consequently, Mr. Johnson has failed to show that he was denied public accommodations with respect to the sales counter.

Finally, with respect to the "readily achievable" element of his ADA claim, citing *Wilson v. Haria & Gogri Corp.*, Mr. Johnson argues that the question of whether removal of the barriers is "readily achievable" is an affirmative defense that must be pled by the answering party. *See* Mot. at 13; *Wilson*, 479 F. Supp. 2d 1127, 1133 (E.D. Cal. 2007). Accordingly, Mr. Johnson believes that this affirmative defense has been waived because Defendants have not appeared in this matter. *See* Mot. at 13.

The Ninth Circuit has yet to decide who bears the burden of proving that removal of an architectural barrier is readily achievable. The Court, however, does find that several courts, including district courts within the Ninth Circuit, follow the burden-shifting framework articulated by the Tenth Circuit. *See, e.g.*, *Vogel*, 992 F. Supp. 2d at 1010 (citing *Colorado Cross Disability v. Hermanson Family, Ltd.*, 264 F.3d 999 (10th Cir. 2001)). Thus, the Court, as it has done in the past, follows the district courts applying the *Colorado Cross* framework. *See, e.g.*, *Ridola*, 2018 WL 2287668, at *10 (applying *Colorado Cross* framework). Under the *Colorado Cross* burden-shifting analysis, the plaintiff bears the initial burden of production to show that a suggested method for removing a barrier is readily achievable, and then the defendant bears the ultimate burden of persuasion on an affirmative defense that removal of a barrier is not readily achievable. *See id.* (citing *Colorado Cross*, 264 F.3d at 1006).

In this action, Mr. Johnson has met his initial burden to show that removal of the identified barriers, the access aisle and guestrooms, is readily achievable. Mr. Johnson alleges that the identified barriers are "easily removed without much difficulty or expense" and that they are "the types of barriers identified by the Department of Justice as presumably readily achievable to [be] remove[d]." Compl. ¶ 29. Additionally, the Complaint alleges that "there are numerous alternative accommodations" to provide people with disabilities a greater level of access even if Defendants could not achieve a complete removal of barriers. *Id*.

Federal regulations provide a non-exclusive list of steps to remove barriers, including "[c]reating designated accessible parking spaces," 28 C.F.R. § 36.304(b)(18), and courts have

observed that the listed items are "examples of readily achievable steps to remove barriers." *Johnson v. Altimira Corp.*, 2017 WL 1383469, at *3 (N.D. Cal. 2017). Moreover, at the default judgment stage, courts have found allegations similar to Mr. Johnson's allegations sufficient to show that the removal of the barriers at issue is readily achievable. *See, e.g.*, *Ridola*, 2018 WL 2287668, at *10-11 (concluding that plaintiff met his burden with respect to defendant's parking spaces and guestrooms).

Because Mr. Johnson has met his burden, Defendants now have the burden of persuasion on an affirmative defense that removal of the identified barriers is not readily achievable. Here, Defendants defaulted and have not defended this action. Thus, Defendants have failed to meet their burden to show that removal of the identified barriers is not readily achievable.

In sum, the Court finds that Mr. Johnson has alleged the requisite elements for an ADA claim.

### 2. Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53

"Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *Molski v. MJ Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007) (citing Unruh Act, Cal. Civ. Code § 51(f)). Thus, because Mr. Johnson has alleged an ADA claim based on the Motel's parking spaces and guestrooms, he has also alleged an Unruh Act claim based on those barriers.

### C. The amount of money at stake

The fourth *Eitel* factor requires the Court to consider the sum of money at stake in relation to the seriousness of a defendant's conduct. *Love v. Griffin*, No. 18-cv-00976-JSC, 2018 WL 4471073, at *5 (N.D. Cal. Aug. 20, 2018). Mr. Johnson seeks statutory damages of $4,000 under the Unruh Act and an award of $6,585[1] for attorneys' fees and costs. While the sum requested is not insignificant, the Court finds that it is proportional to the conduct alleged and that this factor weighs in favor of default judgment.

---

[1] In his Motion, Mr. Johnson requested $6,635 but has since filed a Notice of Errata seeking $400 instead of $450 for the filing fee bringing the total requested to $6,585. Not. of Errata, ECF 20.

### D. The possibility of a dispute concerning material facts and whether Defendants default was due to excusable neglect

Under the fifth and sixth *Eitel* factors, the Court considers whether there is a possibility of a dispute over any material fact and whether Defendants' failure to respond was the result of excusable neglect. *Griffin*, 2018 WL 4471073, at *5; *Ridola*, 2018 WL 2287668, at *13. Because Mr. Johnson pleads plausible claims for violations of the ADA and the Unruh Act, and as all liability-related allegations are deemed true, there is nothing before the Court that would indicate a possibility of a dispute as to material facts. Moreover, there is no indication that Defendants' default was due to excusable neglect. Defendants have not appeared or responded in this action, suggesting that they have chosen not to present a defense in this matter. Accordingly, these factors weigh in favor of default judgment.

### E. The strong policy favoring decisions on the merits

While the Court prefers to decide matters on the merits, Defendants' failure to participate in this litigation makes that impossible. *See Ridola*, 2018 WL 2287668, at *13 ("Although federal policy favors decision on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate."). Default judgment, therefore, is Mr. Johnson's only recourse. *See United States v. Roof Guard Roofing Co.*, No. 17-cv-02592-NC, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome."). As such, the seventh *Eitel* factor weighs in favor of default judgment.

### F. Conclusion

After considering all seven *Eitel* factors and the circumstances of this case, the Court finds that default judgment is warranted and GRANTS Mr. Johnson's motion for default judgment against Defendants.

## V. REQUESTED RELIEF

Because this Court concludes that default judgment is warranted, it now considers Mr. Johnson's request for injunctive relief, statutory damages under the Unruh Act, and attorneys' fees and costs.

### A. Injunctive relief

Mr. Johnson requests an order directing Defendants to bring the Motel's parking lot and guestrooms into compliance with the 2010 ADAAG Standards. *See* Mot. at 8. "A plaintiff need not satisfy '[t]he standard requirements for equitable relief . . . when an injunction is sought to prevent the violation of a federal statute [that] specifically provides for injunctive relief.'" *Griffin*, 2018 WL 4471073, at *6 (quoting *Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011)). Under the ADA, aggrieved individuals "may obtain injunctive relief against public accommodations with architectural barriers, including 'an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'" *MJ Cable, Inc.*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)). Injunctive relief is also available under the Unruh Act. *See* Cal. Civ. Code § 52.1(h). Injunctive relief is proper where the plaintiff establishes that "architectural barriers at the defendant's establishment violate the ADA and the removal of the barriers is readily achievable." *Ridola*, 2018 WL 2287668, at *13 (citing *Moreno v. La Curacao*, 463 F. App'x 669, 670 (9th Cir. 2011)). As discussed above for the second and third *Eitel* factors, Mr. Johnson has demonstrated that the parking aisle and guestrooms at the Motel violate the ADA and that removal of the barriers in the parking aisle and guestrooms is readily achievable. Accordingly, the Court grants Mr. Johnson's request for injunctive relief to bring the Motel's parking lot in line with the 2010 ADAAG Standards.

### B. Statutory damages

Mr. Johnson seeks $4,000 in statutory damages for the Motel's violation of the Unruh Act. Mot. at 14. The Unruh Act provides a minimum statutory damages award of $4,000 for each violation. Cal. Civ. Code § 52(a). Mr. Johnson "need not prove [he] suffered actual damages to recover the independent statutory damages of $4,000." *MJ Cable, Inc.*, 481 F.3d at 731. "Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *Id.* at 731 (citing Unruh Act, Cal. Civ. Code § 51(f)). Mr. Johnson has sufficiently pled that the parking aisle and guestrooms at the Motel violate the ADA. As such, the parking aisle and guestrooms at the Motel constitute a violation of the Unruh Act. The Court, therefore, grants Mr. Johnson's request of $4,000 in statutory damages.

## C. Attorneys' fees

Mr. Johnson requests $6,015 in attorneys' fees under both the ADA and the Unruh Act. Mot. at 17. In support of the fees requested, Mr. Johnson presents a declaration by a fee expert, Richard Pearl, and a survey report pulled from the Real Rate Report for 2018. *Id.* at 20. Further, Mr. Johnson cites three cases that have granted attorneys' fees at the hourly rates Mr. Johnson is requesting. *Id.* at 19; Exh. 6 to Mot., ECF 19-8. The Court, however, is not persuaded that this evidence justifies the attorneys' fees requested by Mr. Johnson.

### 1. Legal Standard

The ADA gives courts the discretion to award attorneys' fees to prevailing parties. *MJ Cable, Inc.*, 481 F.3d at 730 (citing 42 U.S.C. § 12205). Additionally, the Unruh Act provides that "[i]n addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant to [Cal. Civ. Code § 52.1(b)], the court may award the petitioner or plaintiff reasonable attorney's fees." Cal. Civ. Code § 52.1(i).

Whether calculating attorneys' fees under California or federal law, courts follow "the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)). Under the lodestar method, the most useful starting point "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *abrogated on other grounds by Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989). The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Id.*

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th. Cir. 1997). The fee

applicant bears the burden of producing evidence, other than declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum*, 465 U.S. at 896 n.11.

Further, the district court should exclude hours that were not reasonably expended. *See Hensley*, 461 U.S. at 434. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended." *Hensley*, 461 U.S. at 437.

### 2. Discussion

#### a. Rates

As an initial matter, the Court finds a discrepancy between the hourly rates requested in the Motion and the billing statement provided. Mot. at 17; Exh. 1 to Mot. at 9-10, ECF 19-3. In the Motion, Mr. Johnson notes that attorneys Mark Potter and Russel Handy charge $595 per hour and that Amanda Seabock charges $410 per hour. Mot. at 21. According to the billing statement provided, however, Mr. Potter and Mr. Handy charged $650 per hour while Ms. Seabock charged $450 per hour. *See* Exh. 1 to Mot. at 9-10. The Court need not scrutinize this discrepancy because it is not persuaded that Mr. Johnson's arguments justify even the lower rates of $595 and $410 per hour.

The Court finds that the rates Mr. Johnson seeks exceed the rates granted in this community for similar work performed by attorneys of comparable skill, experience, and reputation. The relevant community for this action is the Northern District of California. Indeed, for attorneys with approximately 20 or more years of experience, courts in this district have generally approved hourly rates ranging from $350 to $495 in disability cases. *See, e.g.*, *Castillo-Antonio v. Lam*, No. 18-cv-04593-EDL, 2019 WL 2642469, at *7 (N.D. Cal. Apr. 10, 2019) (approving, on motion for default judgment, $350 hourly rate for attorney with over 20 years of experience); *Johnson v. Castagnola*, No. 18-cv-00583-SVK, 2019 WL 827640, at *2 (N.D. Cal. Feb. 21, 2019) (approving $350 hourly rate for attorney with 20 years of litigation experience, noting that requested rate was unopposed by defendant and in line with rates approved in Northern District); *Wilson v. Red Robin Int'l, Inc.*, No. 17-cv-00685-BLF, 2018 WL 5982868, at *3 (N.D. Cal. Nov. 14, 2018) (approving $495 hourly rate for attorney with 24 years of experience in civil

13

rights litigation, including 12 years devoted to disability law and $475 hourly rate for attorney with over 17 years of litigation experience and more than 8 years of experience in disability law).

Here, Mr. Handy has 20 years of experience, Mr. Potter has 25 years of experience, and Ms. Seabock has 6 years of experience, focusing on disability cases. *See* Exh. 1 to Mot. at 4-5. This Court is mindful of the Ninth Circuit's observation that "[t]he district court's function is to award fees that reflect economic conditions in the district; it is not to 'hold the line' at a particular rate, or to resist a rate because it would be a 'big step.'" *Moreno v. City of Sacramento*, 543 F.3d 1106, 1115 (9th Cir. 2008). Mr. Handy and Mr. Potter have recently been granted hourly rate increases, from $425 to $475, in actions representing Mr. Johnson, and Ms. Seabock has recently been granted an hourly rate of $350. *See Oakwood Ctr. LLC*, 2019 WL 7209040, at *12 (denying Mr. Potter and Mr. Handy an hourly rate of $650, instead granting an hourly rate of $475; granting Ms. Seabock an hourly rate of $350); *see also Johnson v. VN Alliance LLC*, No. 18-cv-01372-BLF, 2019 WL 2515749 (N.D. Cal. June 18, 2019) (granting Mr. Potter and Mr. Handy an hourly rate of $425). In view of the range of rates approved for attorneys practicing in this field, and further recognizing that "decisions pertaining to the same attorneys in question are particularly salient," the Court awards fees for Mr. Handy and Mr. Potter at $475 per hour and for Ms. Seabock at $350 per hour. *Oakwood Ctr. LLC*, 2019 WL 7209040, at *12.

The Court is not persuaded by Mr. Johnson's cited cases or support. To support the reasonableness of the hourly rates in the Motion ($595 and $410), Mr. Johnson relies on *In re Linkedin* and *In re Magsafe*, as examples of attorneys' rates in the Northern District of California. *See* Mot. at 19 (citing *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015), and *In re Magsafe Apple Power Adapter Litig.*, No. 5:091-cv-01911-EJD, 2015 WL 428105, at *11-12 (N.D. Cal. Jan. 30, 2015)). *In re Linkedin* and *In re Magsafe*, however, are both class action suits that do not contain any ADA claims. *Id.* Moreover, the relevant community is only one of the considerations when determining an appropriate hourly rate. Mr. Johnson does not provide any information about the skill, experience, or reputation of the attorneys in either of those cases. Therefore, the Court is not persuaded that the rates awarded in either case are appropriate here.

14

Next, Plaintiff relies on a declaration by fee expert Richard Pearl from a 2010 ADA case and a survey report from the Real Rate Report for 2018. *See* Exh. 7 to Mot., ECF 19-9; Exh. 9 to Mot., ECF 19-10. In his declaration, Mr. Pearl's survey of ADA cases shows that attorneys with 20 to 25 years of experience had court-approved rates of between $500 and $675 per hour, while attorneys with more than six years of experience had court-approved rates ranging between $350 and $425 per hour. Exh. 1 to Mot. at 4-5. Similarly, the Real Rate Report shows that median rates for partners doing work in San Jose is $695 per hour and median rates for associates is $446 per hour. Exh. 9 to Mot. Both Mr. Pearl's declaration and the Real Rate Report, however, fail to consider the nature of work done, and the skill or reputation of the attorneys in each case. As such, the Court is not persuaded that Mr. Pearl's survey, or the Real Rate Report provide a more salient assessment of rates than those previously granted to Mr. Johnson's attorneys.

Finally, Mr. Johnson cites to one decision by another court in this district, *Love v. Rivendell II, Ltd.*, in which the court approved a $650 hourly rate for Mr. Potter and Mr. Handy. *See* Exh. 6 to Motion; Report and Recommendation*, Love v. Rivendell II, Ltd.*, Case No. 18-cv-03907-JST (EDL) (N.D. Cal. Mar. 11, 2019), ECF 2; *see also* Order Adopting Report and Recommendation, *Love v. Rivendell II, Ltd.*, Case No. 18-cv-03907-JST (EDL) (N.D. Cal. Apr. 18, 2019), ECF 30. In *Rivendell*, Mr. Johnson asked for fees as part of a motion for default judgment, and, as with his claim here, Mr. Johnson alleged that the defendants failed to provide accessible parking spaces for disabled persons. *Id.* As other courts in this district recently observed, the *Rivendell* decision relied on cases, such as *Civil Rights Education* and *Rodriguez*, that concerned work that was substantially different than the work performed in the present action. *See, e.g.*, *Oakwood Ctr. LLC*, 2019 WL 7209040, at *11 (granted default judgment in ADA case—distinguished case from *Civil Rights Education* and *Rodriguez*); *AutoZone, Inc.*, 2019 WL 2288111, at *6 n.4 (same). Indeed, *Civil Rights Education* was a complex class action matter involving 54 hotels spread among multiple states and *Rodriguez* involved an ADA claim that included both trial and post-trial attorneys' fees. *See Civil Rights Educ. and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.*, No. 15-cv-00216-DMR, 2016 WL 1177950, at *1 (N.D. Cal. Mar. 22, 2016); *Rodriguez v. Barrita*, 53 F. Supp. 3d 1268, 1279-80 (N.D. Cal. 2014). Therefore, the

Court is not persuaded that the rates awarded in *Rivendell* are appropriate here. Aside from *Rivendell*, Mr. Johnson does not identify any other rulings in which courts have awarded Mr. Johnson fees at this rate for any of his attorneys. As such, the Court is not persuaded that Mr. Johnson's evidence justifies the rates he is requesting.

### b. Hours

Mr. Johnson requests fees based on 9.9 hours of work. *See* Exh. 1 to Mot. at 9-10. This Court and other courts in this district have found approximately 11 hours of work to be reasonable for similar cases. *See, e.g.*, *Ridola*, 2018 WL 2287668 at *17 (granted motion for default judgment in ADA case, found 11.1 hours to be reasonable); *VN Alliance LLC*, 2019 WL 2515749 at *8 (granted motion for default judgment in ADA case, found 11.3 hours to be reasonable). Mr. Johnson's billing statement shows 9.9 hours were expended in this litigation: Mr. Handy and Mr. Potter together expended 7.8 hours while Ms. Seabock expended 2.1 hours. *See* Exh. 1 to Mot. at 9-10. Further, the Court has reviewed the itemized statement of Mr. Johnson's counsel's legal work and finds no issue with the amount of time or activities that Mr. Johnson's counsel has conducted. *Id.*

### 3. Conclusion

In sum, the Court finds the adjusted hourly rates of $475 and $350 and the 9.9 hours expended to be reasonable. Mr. Johnson does not request a multiplier for the lodestar amount. Multiplying the reasonable hourly rates, $475 and $350, and the hours reasonably expended, 7.8 and 2.1 respectively, yields a lodestar amount of $4,440.00 in attorneys' fees.

### D. Costs

In addition, Mr. Johnson seeks $570 in costs. This includes the filing fee ($400), service costs ($70), and investigation costs ($100). The ADA provides that the prevailing party may recover "litigation expenses and costs." 42 U.S.C. § 12205; *see VN Alliance LLC*, 2019 WL 2515749, at *8 (including investigation costs into litigation expenses). As such, Mr. Johnson has provided a billing statement to substantiate his request for $570 in filing fees, service costs, and investigation costs. Exh. 1 to Mot. at 8; *see* Not. of Errata.

**VI. ORDER**

For the foregoing reasons, IT IS ORDERED THAT:

1. Mr. Johnson's motion for default judgment is GRANTED.
2. Mr. Johnson is awarded statutory damages in the amount of $4,000.
3. Mr. Johnson is awarded $5,010 in attorneys' fees and costs.
4. Mr. Johnson is granted an injunction requiring Defendants to bring their parking lot and guestrooms into compliance with the 2010 ADAAG Standards no later than six months after service of this injunction.

Mr. Johnson shall promptly serve Defendants with this Order and file a proof of service with the Court.

**IT IS SO ORDERED.**

Dated: March 1, 2020

_____
BETH LABSON FREEMAN
United States District Judge